## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH CLUGSTON, et al.,** | : | **CIVIL NO. 1:11-CV-455** |
| | : | |
| **Plaintiff,** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JOHN T. MCGINNIS, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Deborah Clugston and David Pelkey arising out of on-going efforts by Ms. Clugston to avoid mortgage foreclosure. As a result of the legal proceedings relating to this mortgage, both in state court and in federal court, there is much about this case which is undisputed.

On August 4, 2006, the Plaintiff, Deborah Clugston executed a mortgage on a property, 342 Stonegate Court, Chambersburg, PA, to secure a $151,500.00 loan made to Clugston for the purpose of purchasing this real estate. (Doc. 9.) Three years later, on November 23, 2009, Clugston transferred her ownership of this property from herself to an entity called the Stonegate Family Trust. (Id.) Clugston then defaulted upon her home mortgage payment obligations. (Id.)  As a result of this property transfer and default in payments, the Defendants were compelled to file a mortgage foreclosure action against Clugston in the Franklin County Court of Common Pleas

in 2010. (<u>Id</u>.) On November 15, 2010, summary judgment was granted in favor of the mortgage holder in this state mortgage foreclosure action and the property was allegedly sold on March 10, 2011, in a Sheriff's Sale.(<u>Id</u>.)

As this state mortgage foreclosure drew to a close, Clugston, and a person identified only as the Executor of the Stonegate Family Trust, David Pelkey, filed a civil action in federal court. (Doc. 1.) This complaint, which was filed on March 10, 2011, the same date that the mortgage foreclosure drew to a close with the Sheriff Sale of this property, was styled as a "complaint for quiet title action." (<u>Id</u>.) In the *pro se* complaint, Clugston and Pelkey, who identify themselves as American citizens, questioned the existence of any mortgage obligations, and made vague assertions that the mortgage lenders were engaged in some form of illegal racketeering enterprise. (<u>Id</u>.) On this basis of these vague, confusing and factually unsupported allegations, the Plaintiffs sought a quiet title judgment in their favor and damages from the individual Defendants. (<u>Id</u>.)

The Defendants have responded to this complaint by filing a series of motions to dismiss the complaint. (Docs. 3, 6, and 7.) These motions have been fully briefed by the Defendants. (Docs. 4, 9, and 10.) Having received these motions, and briefs, the Court entered an order setting a schedule for the prompt resolution of the motions.

That order, in pertinent part, stated that: "the Plaintiff shall file a response to the motions in accordance with Local Rule 7.6 on or before **May 2, 2011**." (Doc. 11.)

This deadline has now passed without any action on the Plaintiffs' part to support or defend the allegations made in this complaint. Therefore, this matter is now ripe for resolution. For the reasons set forth below, it is recommended that the motions to dismiss be granted and this case should be dismissed in its entirety.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted.

At the outset, under the Local Rules of this Court the Plaintiffs should be deemed to concur in these motions to dismiss, since the Plaintiffs have failed to timely oppose these motions, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiffs to respond to  motions and  provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the

prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the Rule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D.Pa. Aug.26, 2010). Moreover, in this case the necessity of compliance with court orders and the local rules was underscored in writing for the Plaintiffs at the outset of this litigation. (Doc. 2.) Nonetheless, despite this explicit warning the Plaintiffs have not complied with the local rules, or this Court's order, by filing a timely response to these motions. Therefore, this procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiffs have failed to comply with Local Rule 7.6 by filing a timely response to the motions to dismiss filed by the Defendants. This failure to respond now compels us to apply the sanction called for under Rule 7.6 and deem the Plaintiffs to not oppose this motion to dismiss.

**B.**     **Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiffs, who have failed to abide by court orders and have neglected to litigate this case.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The Plaintiffs' failures to litigate this claim or comply with court orders now delays the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the Plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The Plaintiffs have now failed to timely file pleadings, and  comply with orders of the Court in a fashion which reflects an emerging pattern of non-compliance.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiffs. At this juncture, where the Plaintiffs have failed to comply with instructions of the Court directing them to take specific actions in this case, the Court is compelled to conclude that the Plaintiffs' actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the Plaintiffs' status as a *pro se* litigants severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the Plaintiffs on their obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiffs still decline to obey court orders, and otherwise ignore their responsibilities as litigants. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the Plaintiff's claims. In our view, however, consideration of this factor also weighs heavily in favor of dismissal of this action. Indeed, our review of this complaint reveals that it plainly fails on its merits. This merits analysis is set forth below:

### C.   The Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

The Defendants have filed motions to dismiss this complaint, in part relying upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.   Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level."   Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words,

a complaint must do more than allege the plaintiff's entitlement to relief.
A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

**D.   The Rooker-Feldman Doctrine and Issue Preclusion Rules Bar This Court From Entertaining Claims Which, In Effect, Compel Us to Review State Court Mortgage Foreclosure Decisions**

This matter arises out of state mortgage foreclosure litigation which concluded in 2010 with the entry of a summary judgment of foreclosure against the Plaintiffs. Despite this adverse state court ruling, the Plaintiffs have now proceeded into federal court with a complaint which necessarily invites us to review, re-examine and reject state court rulings in Clugston's prior state mortgage foreclosure case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". <u>See also Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he <u>Rooker-Feldman</u> doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." <u>Turner v. Crawford Square Apartments III, LLP,</u>, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the <u>Rooker-Feldman</u> doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[<u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>], 544 U.S. at 284, 125 S.Ct. at 1521-22; <u>see also</u> <u>Lance v. Dennis</u>, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

<u>Id.</u>

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," particularly where those lawsuits necessarily require us to re-examine state mortgage foreclosure rulings. See, e.g., Moncrief v. Chase Manhattan Mortgage Corp., 275 F. App'x 149 (3d Cir. 2008)(Rooker-Feldman doctrine precludes re-litigation of state mortgage foreclosure in federal court) ; Ayres-Fountain v. Eastern Savings Bank, 153 F. App'x 91 (3d Cir. 2005)(same); In re Knapper, 407 F.3d 5773 (3d Cir. 2005)(same); Downey v. Perrault, No. 09-1018, 2009 WL 3030051 (D.N.J. Sept. 15, 2009)(same); Easley v. New Century Mortgage Corp., No. 08-4283 (E.D. Pa. July 28, 2009)(same); Laychock v. Wells Fargo Home Mortgage, No. 07-4478, 2008 WL 2890962 (E.D.Pa. July 23, 2008)(same).

In the context of federal litigation challenging prior state mortgage foreclosure judgments a "claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state

court was wrong. In either case, <u>Rooker-Feldman</u> bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims." <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir. 2005). For purposes of applying this doctrine to federal lawsuits attacking prior state mortgage foreclosure cases: "A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment.... In other words, <u>Rooker-Feldman</u> does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." <u>In re Knapper</u>, 407 F.3d at 581 (citations omitted).

Thus:

> "<u>Rooker-Feldman</u> does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its own orders." <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir.2005). "A mortgage foreclosure action depends upon the existence of a valid mortgage. . . . . [Therefore] If [plaintiff's] claim . . .  were permitted to proceed and [plaintiff] obtained a favorable judgment, the resulting federal judgment would necessarily negate the state court foreclosure judgment, a judgment which had been rendered prior to the commencement of [this action]. This result [would be] precisely the outcome prohibited by the <u>Rooker-Feldman</u> doctrine." <u>In re Madera</u>, 388 B.R. 586, 597-98 (E.D.Pa.2008) (dismissing TILA claim following default foreclosure judgment).

> <u>Easley v. New Century Mortg. Corp.</u> 2009 WL 2256692 at *1.

Moreover, there is a second threshold legal hurdle that the Plaintiffs must cross when endeavoring to bring this action. Entirely aside from the <u>Rooker-Feldman</u> doctrine, it is also well settled that an effort to use the federal courts to invalidate, challenge or:

> [R]elitigate [a state] foreclosure action, . . . , is prohibited by Pennsylvania's preclusion doctrine. Federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them. <u>See Rycoline Prods., Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir.1997). Under Pennsylvania law, claim preclusion is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action. <u>Balent v. City of Wilkes-Barre</u>, 542 Pa. 555, 669 A.2d 309, 313 (1995) (internal citations omitted).

<u>Moncrief v. Chase Manhattan Mortg. Corp</u>. 275 F.Appx. 149, 153 (3d Cir. 2008).

These rules have substantive significance here, because as we have previously observed: "In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage. Without a valid mortgage, there is simply nothing to foreclose upon." <u>In re Calabria</u>, 418 B.R. 862, 866-67 (W.D.Pa. 2009)(citations omitted). Therefore, the state foreclosure judgment entered against Clugston is premised upon a finding of a valid mortgage, a finding which cannot now be set aside by the federal courts.

These principles are directly applicable here, and are fatal to Clugston's complaint which: (1) sought to quiet title in favor of Clugston based upon an assertion that no mortgage contract existed between the parties; and (2) asserted broad, and unsupported, claims that the Defendants have engaged in racketeering activity. As to each of these claims, the gravamen of the Plaintiffs' complaint is that the mortgage itself was invalid due to some fraud, over-reaching or misconduct. Thus, this complaint expressly invites this Court to set aside the prior foreclosure judgment entered by the state courts. Moreover, in each instance, the Plaintiffs' claims invite us to find that the legal predicate to this state foreclosure–a valid mortgage–did not exist. These arguments, therefore, involve litigation of a claim concerning the validity of the mortgage, an issue that has been preclusively determined by the prior state litigation. In this setting, issue preclusion principles forbid us from re-visiting this question at this late date in the guise of a federal lawsuit.

### D.    The Plaintiffs Haves Not Adequately Pleaded a Civil RICO Claim

Furthermore, this complaint is flawed in yet another basic way. The complaint appears to assert civil RICO claims. It levels serious allegations of racketeering activity against the Defendants but makes these grave assertions–which amount to accusations fo criminal misdeeds–in a wholly inadequate fashion.

With respect to civil RICO claims involving allegations of fraud arising out of loan agreements, the level of pleading specificity required in a complaint is clear. As the United States Court of Appeals for the Third Circuit has observed:

> In order to plead a [civil] violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. A pattern of racketeering activity requires at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5). These predicate acts of racketeering may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. *See* 18 U.S.C. §§ 1341, 1343. " 'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.' " Where, . . ., plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on  notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.". Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.*

Lum v. Bank of America, 361 F.3d 217, 223-4 (3d Cir. 2004)(citations omitted, emphasis added).

Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."' In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J. 2008).

In this case, the Plaintiffs' complaint simply does not meet the pleading standards required under Rule 9 for civil RICO claims.  In fact, at present, without the inclusion of some further well-pleaded factual allegations, the complaint contains little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice."  Ashcroft v. Iqbal, supra 127 S.Ct. at 1979.  We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however,

we find that the Plaintiffs have been afforded ample opportunity to defend or correct the deficiencies identified in the original complaint by responding to these motions to dismiss. Instead, the Plaintiffs have chosen to neglect their litigation responsibilities, and ignore court ordered pleading deadlines. Further, the Plaintiffs' complaints fails to state a viable cause of action, and granting further leave to amend would appear to be futile and result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend since the flaws in this complaint are profound, irreversible, and not subject to correction.  In short, this complaint, which has not been defended by the Plaintiffs in any fashion, should be dismissed without permitting further leave to file an amended pleading.

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motions to dismiss (Docs. 3, 6, and 7) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of May, 2011.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge